UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| JAMES ALLEGRETTI and | ) | No. 17 B 17844 |
| ALICIA ALLEGRETTI, | ) | |
| | ) | |
| Debtors. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling in this chapter 13 case is the objection of debtors James and Alicia Allegretti to the claim of Webster Bank, N.A. The Bank holds a second mortgage on the Allegrettis' home. The Allegrettis object only to the portion of the claim consisting of the attorney's fees and costs the Bank incurred in state court litigation as well as in a previous chapter 13 case, fees and costs to which the Bank says it is entitled under the note and mortgage. The Allegrettis do not question the terms of the note or the mortgage but insist the Bank's fees and costs are not reasonable, as the two documents require them to be.

For the reasons explained below, the objection will be overruled.

### 1. Jurisdiction

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). *See In re Bulk Petroleum Corp.*, 796 F.3d 667, 670 (7th Cir. 2015) (stating that adjudication of a claim objection is core).

## 2. Background

The relevant facts are drawn from the parties' papers and the court's docket.[1] No facts are in dispute.

The Allegrettis own property in Northbrook, Illinois, that serves as their principal residence. In 2007, they borrowed $207,000 from Webster Bank, executing a note in favor of the Bank. To secure repayment, they executed a mortgage granting the Bank a lien on the property. The note permits the Bank to recover all of its costs and expenses if the Allegrettis default, including "reasonable attorney's fees." The mortgage has a similar provision.

Some time after 2007 (it is unclear exactly when), the Allegrettis defaulted, and in 2013 the Bank brought an action against them in Illinois state court. The action alleged only a breach of the note. The Bank elected not to foreclose on the mortgage because it was a second mortgage. The Bank was initially represented by different counsel; current counsel first appeared for the Bank in July 2014.[2]

The Bank aptly describes the action as "difficult and heavily litigated." (Bank Resp. at 2). The Allegrettis defended the action separately, as if the two of them were strangers rather than co-obligors on the same note. James answered the complaint (denying he had ever signed the note), raised affirmative defenses, and asserted a counterclaim under the Fair Credit Reporting Act.[3] Alicia, on the other hand, failed to answer. She was defaulted, and a default

---

[1] The court can take judicial notice of its own records. *In re Sweports, Ltd.*, 565 B.R. 129, 131 n.1 (Bankr N.D. Ill. 2017).

[2] Attorneys from Thompson Coburn LLP currently represent the Bank. The Bank's claim does not appear to include attorney's fees and costs paid to their predecessors.

[3] The FCRA violation allegedly consisted of reporting his default to credit reporting agencies when in fact he had not signed the note and so could not have defaulted. Although

-2-

judgment was entered against her, although that judgment was later vacated and an answer filed.

Perhaps because of the affirmative defenses and counterclaim, the Bank spent considerable time on discovery in what would otherwise have been a straightforward contract action. In the midst of discovery, the Bank was also compelled to obtain an emergency restraining order against James to stop him from making harassing telephone calls and sending harassing emails to the Bank's president.

In December 2014, the Bank moved for partial summary judgment on its claim against Alicia. After briefing, the motion was granted. The state court entered a partial final judgment against Alicia in October 2015 and set the claim against James for trial. The Bank began its trial preparation. In December 2015, however, counsel for the Allegrettis withdrew, leaving them pro se. Days later, the Allegrettis filed the first of their two chapter 13 bankruptcy cases. The chapter 13 petition stayed the state court action against them.

The chapter 13 case lasted only about seven months, but it, too, was heavily litigated. In the course of the case, the Allegrettis submitted no fewer than five modified plans. All but one of the modified plans proposed to treat the Bank's secured claim as unsecured, presumably by stripping the Bank's lien on the theory that no equity supported it. The Bank filed written objections to each modified plan.[4] In April 2016, the Allegrettis also filed an adversary complaint to strip off the lien.[5] The Bank sought and received an order allowing an inspection of

---

James denied signing the note, he did not deny receiving $207,000 from the Bank, and in his papers here he admits he did. (Allegretti Reply at 2).

    [4]    The Bank did not object to the Allegrettis' original plan, probably because the Bank did not learn of the case for more than a week after it was filed, and the Allegrettis submitted a modified plan well before the initial confirmation hearing.

    [5]    Some decisions hold that an adversary proceeding is necessary to strip off a wholly unsecured junior lien in a chapter 13 case. *See, e.g., In re Forrest*, 424 B.R. 831, 833-35

the property and also sought and received leave to take the Rule 2004 examination of the Allegrettis. While the case was pending, the Bank also repeatedly had the time extended to object to the dischargeability of the Allegrettis' debt.

But nothing came of all this effort. In March 2016, the chapter 13 trustee had moved to dismiss the case on the ground of unreasonable delay prejudicial to creditors. *See* 11 U.S.C. § 1307(c). The motion was continued several times to give the Allegrettis an opportunity to confirm a plan. With no plan confirmed, the trustee's motion was granted in July and the case dismissed. In the weeks after the dismissal, the Bank and the Allegrettis had settlement discussions, but nothing came of those either. In October, the case closed.

In January 2017, the litigation in the state court resumed. The state court once again set the claim against James for trial, and in May the Bank resumed its trial preparations. On June 12, 2017, before the trial could take place, the Allegrettis filed a second chapter 13 case, the current one. The Bank filed a timely proof of claim asserting a total claim of $441,522.66. Of that amount, $93,735.68 consists of attorney's fees and costs due as of the petition date.

The Allegrettis have now objected to the claim on the ground that the Bank's fees and costs (they do not object to other aspects of the claim) are not supported with any sort of itemization and are unreasonable. In response, the Bank has submitted the affidavit of one its attorneys, Lauren Newman, and attached an itemization. Citing *Harris Trust & Sav. Bank v. American Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 591, 594 N.E.2d 1308 (1st Dist. 1992), the

---

(Bankr. N.D. Ill. 2009). Others decisions hold that no adversary proceeding is necessary, that the lien can be stripped off by motion or in the debtor's plan. *See, e.g., In re King*, 290 B.R. 641, 647-48 (Bankr. C.D. Ill. 2003). The issue arguably became moot with the December 2017 adoption of the national chapter 13 plan form which allows a secured creditor's lien to be stripped when the collateral supporting it has "no value." *See* Off. Form No. B113, § 3.2.

Bank asserts that the affidavit meets the requirements for fee requests under Illinois law. In their reply, the Allegrettis complain that the Bank failed to attach the itemization to its proof of claim.[6] They also single out for criticism specific entries on the itemization and label as excessive or unnecessary the time spent on particular tasks.[7]

### 3. Discussion

The objection will be overruled. Under the applicable law – federal law, not Illinois law – the Bank has supported adequately its request for attorney's fees and costs, and the Allegrettis have supplied no cognizable reason to reduce the amounts sought.

Both sides treat the reasonableness of the Bank's fees and costs as a question of Illinois law. If that were so, the kind of intensive scrutiny to which the Allegrettis subject the Bank's itemization would be necessary. Illinois standards for attorney's fee requests are exacting. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 774 n. 21 (7th Cir. 2010) (making this observation). The petitioner must present the court with "detailed records containing facts and

---

[6] According to the Allegrettis, the failure to attach the itemization alone means the claim must be disallowed. Not so. *See In re Guidry*, 321 B.R. 712, 714 (Bankr. N.D. Ill. 2005) (holding that the failure to attach supporting documents is not a basis for disallowing a claim). At most, that failure would deprive the proof of claim of its prima facie evidentiary effect under Rule 3001(f), Fed. R. Bankr. P. 3001(f), and give the Bank the burden of going forward at any evidentiary hearing. *Id.* at 715. There will be no evidentiary hearing here. At the status hearing when the Allegrettis' claim objection was taken under advisement, both sides agreed no hearing was necessary.

[7] The words "excessive" and "unnecessary" do not actually appear. The Allegrettis instead spit venom, calling the fees "staggering," "shocking," even "obscene." (Allegretti Reply at 6-7). They describe the Bank's preparation for depositions in the state court litigation as a "simply stunning waste of time and resources." (*Id.* at 6). And they accuse Ms. Newman of "truly obscene file churning" in the current chapter 13 case (although, as the Bank correctly points out, the current case is irrelevant to the claim objection). (*Id.* at 7). Rhetoric like this is not only unpersuasive, it is unprofessional. Counsel for both sides have been advised to lower the emotional temperature of their papers.

computations upon which the charges are predicated specifying the services performed, by whom they were performed, the time expended and the hourly rate charged." *Harris Trust*, 230 Ill. App. 3d at 595, 594 N.E.2d at 1312. The court must then weigh a host of other factors, such as the nature of the case, the novelty of the issues, and the skill of the attorneys employed. *Id.* A line-by-line examination of the attorney's records is typical. *See, e.g., Harris Trust*, 230 Ill. App. 3d at 599, 594 N.E.2d at 1314; *Mercado v. Calumet Fed. Sav. & Loan Ass'n*, 196 Ill. App. 3d 483, 494, 554 N.E.2d 305, 313 (1st Dist. 1990).

But state law does not apply to requests for attorney's fees in federal court – including requests under contractual fee-shifting provisions. According to the Seventh Circuit, the standards for proving the reasonableness of attorney's fees are procedural, not substantive. *See Metavante*, 619 F.3d at 774; *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004); *see also Capital One Auto Fin., Inc. v. Orland Motors, Inc.*, No. 09 C 4731, 2012 WL 3777025, at *4 (N.D. Ill. Aug. 27, 2012) (stating that the method of determining attorney's fees is "a procedural issue"); *JPMorgan Chase Bank, N.A. v. PT Indah Kiat Pulp & Paper Corp.*, 729 F. Supp. 2d 1014, 1021 (N.D. Ill. 2010) (stating that the requirements of proving the reasonableness of fees "are procedural matters"), *aff'd*, 707 F.3d 853 (7th Cir. 2013). Because they are, and because federal law controls procedure in the federal courts, *Elustra v. Mineo*, 595 F.3d 699, 704 (7th Cir. 2010), the applicable standards come from federal law, not state law, *Taco Bell*, 388 F.3d at 1076; *JPMorgan*, 729 F. Supp. 2d at 1021.[8]

---

[8] This, of course, assumes the validity of the initial premise – that the standards for evaluating attorney's fees are procedural. As the court observed in *Landmark Am. Ins. Co. v. O'Malley*, No. 13 C 2552, 2015 WL 515242 (N.D. Ill. Feb. 6, 2015), a "strong argument" might be made that the decision of Illinois to look closely at attorney's fees "is more of a substantive decision . . . than a procedural one." *Id.* at *2 n.1. As the court also observed, however, the argument is beside the point: the Seventh Circuit's decisions on the subject are binding. *Id.*; *see*

The decisions reaching this conclusion all arise under federal diversity jurisdiction, *see, e.g., Taco Bell*, 388 F.3d at 1076, but the same conclusion follows in bankruptcy. Just as federal law governs procedure in diversity cases, *see Hanna v. Plumer*, 380 U.S. 460, 465 (1965), it governs procedure in bankruptcy cases, *see United Airlines, Inc. v. HSBC Bank USA, N.A.*, 416 F.3d 609, 617 (7th Cir. 2005) ("State procedures do not matter in bankruptcy. State law defines property rights, but federal law prescribes the hoops through which the litigants must jump."); *Vancil Contracting, Inc. v. Tres Amigos Props., LLC (In re Vancil Contracting, Inc.)*, Nos. 06-71254, 07-7044, 2008 WL 2557459, at *1 (Bankr. C.D. Ill. June 24, 2008); *In re Wheatfield Bus. Park LLC*, 286 B.R. 412, 425 (Bankr. C.D. Cal. 2002).

The Allegrettis argue that section 1322(e) of the Code expressly applies state law to a mortgage creditor's attorney's fees and costs. Section 1322(e) declares that the amount necessary under a chapter 13 plan to cure a default in payments on a secured claim "shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e). The Allegrettis reason that since "applicable nonbankruptcy law" ordinarily means state law, the stricter Illinois standards apply to the claims of mortgage creditors for fees and costs. Some courts follow this reasoning. *See, e.g., In re Coates*, 292 B.R. 894, 900 (Bankr. C.D. Ill. 2003).

But section 1322(e) is no help to the Allegrettis, and their argument is actually a non-sequitur. The Allegrettis are right that the substantive nonbankruptcy law applicable here is Illinois law. Because Illinois allows the enforcement of contractual fee-shifting provisions, and

---

*Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (reminding trial judges in this circuit that "[i]n a hierarchical system, decisions of a superior court are authoritative on inferior courts," and trial judges "must follow the decisions of this court whether or not they agree").

because the Bank's note and mortgage only permit the recovery of "reasonable" fees and costs, section 1322(e) means the cure amount in the Allegrettis' plan – if the plan sought to cure their default to the Bank – would have to be reasonable.[9] Under the Seventh Circuit's decisions, though, *how* the court determines what is reasonable is a procedural matter, not a substantive one, and the law applicable to federal court procedure is, it bears repeating, federal. *United Airlines*, 416 F.3d at 617. Although *Coates* takes the Allegrettis' view, other trial courts in this circuit have properly employed federal law in evaluating the attorney's fee claims of mortgage holders in chapter 13 cases. *See, e.g., McCarthy v. Nekoosa Port Edwards State Bank*, No. 13-cv-0092-wmc, 2013 WL 3942185, at *4 (W.D. Wis. July 30, 2013).[10]

Federal law assesses attorney's fees for "commercial reasonableness." *Matthews v. Wisconsin Energy Corp.*, 642 F.3d 565, 572 (7th Cir. 2011); *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999). Commercial reasonableness depends, not on the minutiae of an attorney's billing, but on "the market's mechanisms." *Medcom*, 200 F.3d at 520; *Capital One*, 2012 WL 3777025, at *4. Rather than engage in a "'detailed, hour-by-hour review'" of an attorney's bills, then, courts undertake an "'overview . . . of [the] aggregate

---

[9] The Allegrettis' plan does not in fact propose to treat the Bank's claim as secured and cure the default. Their plan would treat the Bank's claim as wholly unsecured, pay the Bank (along with all other general unsecured creditors) ten cents on the dollar, and discharge the rest of the claim. So it is hard to see what relevance section 1322(e) has to the Allegrettis' case.

[10] Federal law would arguably apply even if the standards for evaluating attorney's fees sought under contractual fee-shifting provisions were considered substantive rather than procedural. Property interests in bankruptcy are "defined by state law" – "[u]nless some federal interest requires a different result." *Butner v. United States*, 440 U.S. 48, 55 (1979). The Seventh Circuit's decisions identify such an interest: protecting the federal judiciary's limited resources. *Taco Bell*, 388 F.3d at 1076. Prohibiting the detailed examination of attorney's fees requests prevents fee disputes in the federal courts from becoming protracted, "drain[ing] the institution of its most valuable resource – time." *Metavante*, 619 F.3d at 774.

costs.'" *Metavante*, 619 F.3d at 774 (quoting *Medcom*, 200 F.3d at 521); *see also Matthews*, 642 F.3d at 572. The goal is to ensure those costs "'were reasonable in relation to the stakes of the case'" and to the other side's "'litigation strategy.'" *Metavante*, 619 F.3d at 774 (quoting *Medcom*, 200 F.3d at 521).

The strongest evidence that fees are commercially reasonable is that the client paid them, especially when recovery was uncertain. *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008); *Medcom*, 200 F.3d at 520; *Balcor Real Estate Holdings v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996). Other factors include whether the total amount of fees and expenses was less than or comparable to the other side's fees and expenses, *Medcom*, 200 F.3d at 521, and whether an in-house attorney monitored the bills submitted, *Balcor*, 73 F.3d at 153. *See Capital One*, 2012 WL 3777025, at *4 (listing potential "indicators of reasonableness"); *CSX Ins. Co. v. Pacific Rail Servs.*, No. 07 C 2738, 2011 WL 1692166, at *5 (N.D. Ill. May 3, 2011) (same).

The evidence in this case, what there is of it, demonstrates the commercial reasonableness of the Bank's attorney's fees and expenses. Most important, Ms. Newman's affidavit establishes that the Bank paid the fees. So these are not "pie-in-the sky numbers that one litigant seeks to collect from a stranger but would never dream of paying itself." *Medcom*, 200 F.3d at 520. Not only did the Bank pay the fees, it paid them when its recovery on the Allegrettis' note was uncertain. With recovery uncertain, the Bank might have had to "cover the outlay" itself, *id.* at 521, and so had "incentives to economize," *Taco Bell*, 388 F.3d at 1076. Whether in-house attorneys at the Bank reviewed the bills is unclear, but it is reasonable to assume they did: the itemization shows constant communications between attorneys at Thompson Coburn and not one

but two in-house attorneys at the Bank.[11]

The total amount of $93,735.68 is also reasonable in relation to what was (and still is)s at stake. Although the record does not disclose what the Allegrettis owed the Bank when the state court action began, the proof of claim in the current chapter 13 case shows that on the petition date the Bank was owed $333,795.59 in principal and interest, more than three times the Bank's fees and costs.

Those fees and costs are particularly reasonable given the Allegrettis' "litigation strategy." *Medcom*, 200 F.3d at 521. As discussed earlier, the Allegrettis went out of their way to make the Bank's simple contract action in the state court as difficult as possible. James and Alicia pursued separate defenses, with James defending and Alicia initially defaulting. Because the defenses were separate, the Bank was eventually able to move for summary judgment against Alicia but had to prepare for trial against James – only to have the Allegrettis' first chapter 13 case intervene. That case, too, required a great deal of legal work on the Bank's part. And when the case was dismissed, the Bank had to start preparing for trial in the state court all over again – and then stop again when the Allegrettis filed a second chapter 13 case. Having defaulted on the loan and put the Bank to the trouble of incurring attorney's fees and costs, the Allegrettis are in no position to complain about the amount. *See Balcor*, 73 F.3d at 153 (making this point). As for the Allegrettis' own fees and costs in the state and bankruptcy courts, they have not been identified. So they provide no basis for finding the Bank's fees and costs unreasonable.[12]

---

[11]   The itemization submitted gives the date and length of each communication and identifies the in-house attorney and Thompson Coburn attorney involved. The subject of the communication, however, has been redacted.

[12]   The Allegrettis assert that attorneys in a chapter 13 case are "normally subject to a 'flat fee' restriction of $4,000." (Allegretti Reply at 7). The term "restriction" is inaccurate. The

-10-

Rather than address the question of commercial reasonableness, the Allegrettis attack particular entries in the Thompson Coburn itemization. They complain that too much time was spent on certain tasks (a motion for substitution of counsel, a response to a document request, the proof of claim in the chapter 13 case, specific court appearances), that some of the entries have vague descriptions of the work performed, and that others have the descriptions redacted. The Allegrettis go so far as to attach a revised version of the itemization reflecting what they contend would be reasonable fees.

The Allegrettis' approach entails the kind of close examination that federal law prohibits here. What the Allegrettis should have done was explain why, given an overview of the Bank's fees and costs, those fees and costs were not commercially reasonable. Because they have offered no such explanation, and because the Bank has shown that its attorney's fees and costs were in fact commercially reasonable, the Allegrettis' objection to the Bank's claim will be overruled.

### 4. Conclusion

The objection of debtors James and Alicia Allegretti to the claim of Webster Bank, N.A., is overruled. The claim is allowed in the amounts shown in the proof of claim. A separate order

---

bankruptcy court for this district permits counsel for a debtor in a chapter 13 case to receive a $4,000 flat fee without submitting the itemization of services that would otherwise be required under section 330 of the Bankruptcy Code, 11 U.S.C. § 330. *See generally In re Brent*, 458 B.R. 444, 450-52 (Bankr. N.D. Ill. 2011) (describing the history of the flat or "no-look" chapter 13 fee in this district). Counsel who have elected the flat fee can request more than $4,000 if extraordinary circumstances warrant a greater fee. Counsel are also free to forego the flat fee entirely and submit an itemization of services. The Allegrettis do not say whether their attorneys sought or intended to seek the flat fee in the first chapter 13 case, nor do they disclose what if anything their attorneys were actually paid. The docket in the case reflects no application for compensation, and the trustee's final report and account shows no distributions to the attorneys.

will be entered consistent with this opinion.

Dated: April 24, 2018

_____
A. Benjamin Goldgar
United States Bankruptcy Judge